# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

WALTER J. JACKSON, JR.,

Plaintiff,

v.

RAY MABUS, Secretary of the Navy,

Defendant.

Civil Action No. 10-1861 (BJR)

MEMORANDUM OPINION AND ORDER

In this action, Walter J. Jackson ("Jackson") challenges the Board of Correction of Naval Records' ("BCNR" or "the Board") decision not to correct his records and the Board's denial of his request to reconsider its decision. Before the Court are Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment ("Def.'s Mot. Dismiss/Summ. J.") [Dkt. #35] and Plaintiff's Motion for Summary Judgment [Dkt. #39]. Having reviewed the parties' briefs together with the relevant materials, for the reasons set forth below, Defendant's Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART**; Defendant's Motion for Summary Judgment is **GRANTED**; and Plaintiff's Motion for Summary Judgment is **DENIED**.

## I. BACKGROUND

### A. Factual Background

Jackson enlisted in the United States Navy in 1989. Second Amended Complaint ("Second Am. Compl.") [Dkt. #31] ¶ III. Jackson served in the Navy until 1999 when he was honorably discharged. *Id.* ¶ IV. He re-enlisted in 2000. *Id.* ¶ VII. In 2004, Jackson was transferred to United States Naval Computer and Telecommunications Stations Bahrain ("NCTS Bahrain"). *Id.* ¶ XVIII.

1

In February 2005 while serving at NCTS Bahrain, Jackson was counseled by his superior officer for checking out a day early for his scheduled leave. Def.'s Mot. Dismiss/Summ. J. at 3. Later that year, Jackson sought and received Funded Environmental and Morale Leave ("FEML"). Second Am. Compl. ¶ XXI. His ticket, organized and purchased by the government travel office, was for a flight departing Bahrain one day earlier than his FEML had been scheduled. *Id.* ¶¶ XXII, XXIII. According to Plaintiff, before leaving, Jackson checked out with his Command Duty Officer, who instructed Jackson to leave despite the discrepancy between the date on his leave orders and the date of his scheduled flight. *Id.* ¶ XXV. When Jackson returned to NCTS Bahrain and checked back in with a different Command Duty Officer, he was one day later than his scheduled leave. Def.'s Mot. Dismiss/Summ. J. at 3. Jackson was charged with unauthorized absence. Second Am. Compl. ¶ XXVIII. Given the choice, Jackson demanded a court martial rather than non-judicial punishment, known as Captain's Mast. *Id.* ¶¶ XXIX, XXX, XXXI.

Shortly after Jackson requested a court martial, Hurricane Katrina struck Louisiana, where Jackson's family lived. Second Am. Compl. ¶ XXXIII. In response to Hurricane Katrina, the Chief of Naval Operations directed commanding officers to make every effort to support members of the Navy by granting leave to those with family members affected by the hurricane, notwithstanding a standing policy at NCTS Bahrain limiting members to thirty-two days of leave each year in order to ensure extensive leave was not taken during relatively short tours of duty. Def.'s Mot. Dismiss/Summ. J. at 5.

Jackson requested thirty days emergency leave to assist his family, but his request was denied due to his pending court martial. Second Am. Compl. ¶¶ XXVI, XXXVII. Jackson then accepted non-judicial punishment. He received a suspended reduction to the next inferior pay

grade (E-5) and was required to forfeit half of his pay for two months. *Id.* ¶¶ XXVII, XL. Jackson again requested emergency leave. *Id.* ¶ XLI. He was granted sixteen days leave, *Id.* ¶ XLV, and he left for New Orleans on November 30, 2005, Def.'s Mot. Dismiss/Summ. J. at 7. His leave was extended three times while he was in New Orleans—for seven days, two days, and another two days. Second Am. Compl. ¶ XLVI.

According to Defendant, in April 2006, Jackson disobeyed an order and engaged in a verbal altercation with a superior officer, violating the probation he was serving from his earlier non-judicial punishment. Def.'s Mot. Dismiss/Summ. J. at 7. In response, his previously suspended reduction in rank was imposed, making his rank E-5 effective in May 2006. *Id.* at 8.

In addition to the above instances, Jackson received several poor performance evaluations and was not recommended for reenlistment. Second Am. Compl. ¶¶ XLVIII, L, LIV. According to Plaintiff, Jackson filed two protective communications under the Military Whistle Blower Act—once before his non-judicial punishment and once after his adverse performance evaluations. Plaintiff's Opposition to Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment ("Pl.'s Opp'n Def. Mot. Dismiss/Cross-Mot. Summ. J.") [Dkt. #36] at 11-12. Jackson was honorably discharged from the army in July 2006 with the reenlistment code RE-4, which signifies that the individual is not recommended for reenlistment in any branch of service. *Id.* ¶¶ LV, LVI.

### B. Procedural Background

Jackson initially sought to modify his records through appeal to the BCNR in January 2007. Second Am. Compl. ¶ LVII. Jackson asked the BCNR to remove the non-judicial punishment from his record; correct the reason for his discharge; change his separation and re-

entry code to "KBK" and "RE-1"; and remove two evaluations from 2006. *Id.* In May 2007, the BCNR denied his application. *Id.* ¶ LVIII. The BCNR summarized the record and stated "the evidence was insufficient to establish the existence of probable material error or injustice." Administrative Record ("AR") at 40.

Jackson requested the BCNR reconsider his request in September 2007. Def.'s Mot. Dismiss/Summ. J. at 10. According to its governing regulations, the BCNR must approve a request for reconsideration if the applicant presents new and material evidence. 32 C.F.R. § 723.9. New evidence is "evidence not previously considered by the Board and not reasonably available to the applicant at the time of the previous application." *Id.* Material evidence is "likely to have a substantial effect on the outcome." *Id.* The BCNR denied Jackson's request for reconsideration that September, stating only that there was no new or material evidence submitted to the BNCR for review. AR at 5. Shortly after its denial of reconsideration, the BCNR received a binder of information in support of Jackson's request for reconsideration. Def.'s Mot. Dismiss/Summ. J. at 10-11. The Board did not change its decision and did not consider the material in the binder. *Id.*

Jackson filed this case in November 2010. Second Am. Compl. ¶ LIX. This Court remanded the case to the BCNR to consider the binder of evidence received after the first denial of reconsideration. *Id.* ¶ LX. The BCNR again denied Jackson's request in February 2011. *Id.* ¶ LXII. The denial was not communicated to Jackson until May 2011. Def.'s Mot. Dismiss/Summ. J. at 11. The BCNR's denial echoed its September 2007 denial, stating there was no new or material evidence for the board to consider. The same month, Jackson submitted results from a polygraph test and a report by an investigator. Second Am. Compl. ¶ LXV. In September 2011, after reviewing the additional evidence, the BCNR denied this request for

4

reconsideration. Once again, the board sent a conclusory letter asserting no new or material evidence was provided by Jackson. AR at 633.

After an amended complaint and cross motions for summary judgment, this Court remanded this case to the BCNR, requesting its reasons for concluding that Jackson's most recent request did not include new and material evidence as required by 32 C.F.R. § 723.9. Second Am. Compl. ¶ LXVII. In its most recent review, the BCNR reviewed all of the evidence submitted by Jackson, including the polygraph and investigation report, and denied Johnson's request for reconsideration. Second Am. Compl. ¶ LXXII; Def.'s Mot. Dismiss/Summ. J. at 12. As to the polygraph, the BCNR explained that it "merely . . . recit[ed] . . . the facts as to why [Jackson] thought [he] had been on authorized leave" and confirmed the evidence already reviewed by the BCNR. AR at 607. Therefore, according to the BCNR, no new and material evidence was submitted and reconsideration was not justified. AR at 608. The BCNR also addressed Jackson's arguments concerning his unauthorized leave. The BCNR found that the leave extended longer than allowed and that Jackson did not have reason to believe that the Command Duty Officer had the authority to modify or approve changes to his leave. *Id.* Last, the BCNR said that Jackson did not have whistleblower status because no "protected communication . . . resulted in reprisal." *Id.*

Following the BCNR's most recent denial, Jackson filed a Second Amended Complaint. [Dkt. #31]. Jackson's Second Amended Complaint alleges his Commanding Officer and the BCNR made decisions that were arbitrary and capricious, unsupported by substantial evidence, and in contravention of law. Additionally, in his complaint Jackson claims his Commanding Officer and the BCNR violated his due process rights. The parties then filed the motions currently before the Court.

5

## II. MOTION TO DISMISS

### A. Standard of Review

The justiciability of a case is properly raised and adjudicated upon a motion to dismiss for failure to state a claim upon which relief can be granted. *See Oryszack v. Sullivan*, 576 F.3d 522, 526 (D.C. Cir. 2009). On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6), a court may dismiss a case if Plaintiff's complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). The court must view the factual allegations as true and consider them in the light most favorable to the non-moving party. *See, e.g.*, *Tradeau v. Federal Trade Com'n*, 456 F.3d 178, 193 (D.C. Cir. 2006).

### B. Analysis

Defendant moves to dismiss on the grounds that Plaintiff's claims, which relate to the actions of his Commanding Officer and the decisions of the BCNR, are not justiciable. Def.'s Mot. Dismiss/Summ. J. at 18. Defendant alleges the military personnel decisions at issue in Plaintiff's complaint are beyond the scope of this Court's judicial review. *Id.* Specifically, Defendant argues that asking this Court to rule that Plaintiff's Commanding Officer's punishment was unreasonable, that Jackson's continued service was not prejudicial to order, and that Jackson's performance evaluations must be changed and allow for reenlistment impermissibly demands this Court "second-guess whether the Navy acted prudently." *Id.*

Plaintiff argues that the claims in his Second Amended Complaint are justiciable because courts can review correction board decisions under the arbitrary and capricious standard. Pl.'s Opp'n Def. Mot. Dismiss/Cross-Mot. Summ. J. at 18.

*1.     Review of the BCNR*

As to Plaintiff's claims against the BCNR, it is a "well settled rule that decisions of boards for corrections of military records are subject to review under the APA [Administrative Procedure Act]." *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006); *see, e.g.*, *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1513-14 (D.C. Cir. 1989). Judicial review of the BCNR is proper because "the district court merely . . . evaluate[s], in light of familiar principles of administrative law, the reasonableness of the Secretary's decision not to take certain corrective action with respect to appellant's record." *Kreis*, 866 F.2d at 1511. Reviewing the BCNR's decision only requires this Court to assess the Board's decision-making procedures not its substantive decision. *See Id.* Therefore, Defendant's Motion to Dismiss is denied as to review of the BCNR's actions.

*2.     Review of the Commanding Officer*

Plaintiff also contests actions taken by his Commanding Officer. The claims challenge the underlying facts found, evaluations conducted, and regulations interpreted by Plaintiff's Commanding Officer. Because "[c]ourts are not in the business of substituting their judgment for that of military officers," this Court may not review the decisions made by Plaintiff's Commanding Officer. *Powers v. Donley*, 844 F. Supp. 2d 65, 71 (D.D.C. 2012); *see also Piersall*, 435 F.3d at 324-25. To do so would "take the judiciary far afield of its area of competence." *Cone v. Caldera*, 223 F.3d 789, 792 (D.C. Cir. 2000). Reviewing a performance evaluation would require the Court to assess the subjective judgment of the military officer who conducted the evaluation. *See Powers*, 844 F. Supp. at 71. Because allegations against a naval officer are not justiciable, the Court grants Defendant's Motion to Dismiss as to claims regarding the actions of Plaintiff's Commanding Officer.

## III. CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A. Standard of Review

The Administrative Procedure Act ("APA") provides the standard of review for deciding a motion for summary judgment when a district court reviews an administrative action. 5 U.S.C. § 706; *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006). "Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Buckingham v. Mabus*, 772 F. Supp. 2d 295, 300 (D.D.C. 2011) (quoting *Catholic Health Initiatives v. Sebelius*, 658 F. Supp. 2d 113, 117 (D.D.C. 2009)). Therefore, summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Sierra Club*, 459 F. Supp. 2d at 90 (citing *Richard v. INS*, 554 F.2d 1173, 1177 n. 28 (D.D.C. 1977)).

In reviewing an administrative action, a district court must determine whether the administrative action was arbitrary and capricious, contrary to law, or unsupported by substantial evidence. § 706. To pass arbitrary and capricious review, the administrative body "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). If the administrative action is reasonable, the court must accept it. *Roberts v. Harvey*, 441 F. Supp. 2d 111, 118 (D.D.C. 2006). An administrative

decision that satisfies arbitrary and capricious review also satisfies the substantial evidence test. *Assoc. of Data Processing Serv. Org., Inc. v. Bd. Of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683-84 (D.C. Cir. 1984) ("[T]here is no *substantive* difference between what [arbitrary and capricious] requires and what would be required by the substantial evidence test.").

The standard of review established by the APA is deferential to administrative action. In determining whether an administrative decision violates the APA standard, a court has a very narrow review and does not substitute its judgment for that of the agency. *State Farm*, 463 U.S. at 43. Indeed, "even if a board could have explained its reasons . . . in more detail, an agency's decision [need not] be a model of analytic precision to survive a challenge." *Roberts v. United States*, 883 F. Supp. 2d 56, 69 (D.D.C. 2012) (alteration in original) (internal quotation and citation omitted). A court's deference is heightened when it reviews an administrative decision by the military, *see, e.g.*, *Kreis*, 866 F.2d at 1513, as there is a "presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully and in good faith." *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997). Therefore, the actions of the BCNR receive substantial deference.

### B. Analysis

Because Plaintiff's claims against the BCNR are justiciable, this Court must determine whether the BCNR's decision was arbitrary and capricious, unsupported by substantial evidence, or in contravention of law. While Plaintiff's complaint and briefs devote considerable attention to both the BCNR's initial denial of relief and its subsequent denials of reconsideration, the Court evaluates only whether the BCNR ultimately provided an explanation that demonstrated that its action was not arbitrary and capricious. Since the BCNR finally provided a reasoned

explanation for its decision, the Court finds the BCNR's decision was not arbitrary and capricious.

   1.   *Arbitrary and Capricious or Unsupported by Substantial Evidence*

Plaintiff argues that the BCNR's denial of relief and denials of reconsideration do not adequately explain the connection between the facts found and the decision made and thereby fail arbitrary and capricious review. Specifically, Plaintiff insists that the BCNR did not explain how the polygraph and investigation were not new or material; that the BCNR impermissibly "rubber-stamped" the advisory opinion provided by Plaintiff's Commanding Officer; that the BCNR failed to inquire into whether Plaintiff deserved protection as a military whistleblower; and that the BCNR violated Plaintiff's due process rights.

      a.   New and Material Evidence

Plaintiff first claims that the BCNR's denial was arbitrary and capricious because it failed to explain how the polygraph and investigation Plaintiff submitted to the Board were not new or material. Opp. Def. Mot. Dismiss/Mot. Summ. J. at 27. Defendant suggests the BCNR "reasonably found" the polygraph and investigation did not provide the board with new and material evidence to justify reconsideration. Def.'s Mot. Dismiss/Summ. J. at 23. In previous denials of reconsideration, the BCNR only asserted that the polygraph and investigation was not new or material. AR at 5, 27, 633. However, in October 2013, the Board explained that it found the documents were "merely a recitation of the facts as to why [Jackson] thought [he] had been on authorized leave" and "confirmed [Jackson] believed [he] w[as] in a leave status when departing." AR at 607. Given that explanation, the BCNR's most recent denial demonstrated

why the board did not believe there was new and material evidence to justify reconsideration.

        b.        Advisory Opinion

Second, Plaintiff claims the BCNR's denial was arbitrary and capricious because it impermissibly "rubber-stamped" the advisory opinion provided by the Commanding Officer. Opp. Def. Mot. Dismiss/Mot. Summ. J. at 27. Defendant argues that the BCNR was justified in adopting the advisory opinions of Plaintiff's Commanding Officer. Def.'s Mot. Dismiss/Summ. J. at 23. If the Board adopted the Commanding Officer's advisory opinion in its denial of reconsideration, that action would not make the decision arbitrary and capricious. Indeed, the BCNR's regulations authorize the board to consider advisory opinions as part of the record before it. 32 C.F.R. § 723.6(c). Additionally, the court in *Roberts* held that "it is not inherently problematic for a military review board to seek out one or more advisory opinions . . . and then rely on the reasons in those opinions in coming to its determination." *Roberts*, 883 F. Supp. 2d at 70. Reliance on an advisory opinion does not render the BCNR's denial of reconsideration arbitrary and capricious.

        c.        Military Whistleblower

Plaintiff's third argument is that the BCNR's denial was arbitrary and capricious because it failed to inquire into whether Plaintiff deserved protection as a military whistleblower. Pl.'s Opp'n Def. Mot. Dismiss/Cross-Mot. Summ. J. at 34. The BCNR inquired into the validity of Plaintiff's whistleblower claim when it reached a conclusion concerning the elements of an action under the Military Whistle Blower Act. 10 U.S.C. § 1034(f) (requiring an applicant show a protected communication, prior to adverse action, that was a negative personnel decision, that was connected to the protected communication). The BCNR explained that it was "unable to

find any protected communication [that Jackson] made resulted in reprisal." AR at 207. The BCNR is not required to resolve an issue in favor Plaintiff in order to pass arbitrary and capricious review; it need only examine the evidence and explain its finding. Therefore, the BCNR adequately explained its decision concerning Plaintiff's whistleblower status.

The Court concludes the BCNR's ultimate decision was not arbitrary and capricious.[1]

*2.     Contravention of Law*

Separately, Plaintiff argues that the BCNR violated its enabling statute by not using its equitable powers and reconsidering Plaintiff's request. Second Am. Compl. ¶ XXXIII. Plaintiff's argument fails. The equitable powers granted in the Board's enabling legislation are discretionary. 10 U.S.C. § 1552 ("The Secretary of a military department *may* correct any military record of the Secretary's department *when the Secretary considers it necessary* to correct an error or remove an injustice.") (emphasis added). Here, the BCNR decided not to grant Plaintiff's request because it concluded, based on the evidence before it, that there was no injustice. Because the BCNR has the discretion to make such a determination, *Mail Order Ass'n of America v. United States Postal Serv.*, 2 F.3d 407, 421 (D.C. Cir. 1993), there was no contravention of law.[2]

---

[1] Plaintiff argues that the BCNR violated his due process rights by not informing him of the specific evidence supporting its findings and by not following its own regulations. Pl.'s Opp'n Def. Mot. Dismiss/Cross-Mot. Summ. J. at 42. "[T]he guaranty of due process . . . demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained." *Nebbia v. New York*, 291 U.S. 502, 510-11 (1934); *see also Holy Land Found. For Relief and Dev. v. Ashcroft*, 333 F.3d 156, 163 (D.C. Cir. 2003). Because the BCNR's decision was not arbitrary and capricious, the Court finds Plaintiff's due process rights were not infringed.

[2] Plaintiff also claims in his brief that his Commanding Officer should be equitably estopped from punishing Plaintiff because Plaintiff detrimentally relied on representations by his Commanding Officer. Pl.'s Opp'n Def. Mot. Dismiss/Cross-Mot. Summ. J. at 39. However, Plaintiff's Second Amended Complaint contains no such claim. Plaintiff cannot raise in his Motion for Summary Judgment a claim not contained in his complaint. *See Queen v. Schultz*, 888 F. Supp. 2d 145, 168 (D.D.C. 2012) ("The Court holds that the plaintiff may not raise his . . . claim at the summary judgment stage because he failed to raise such a claim in his Complaint.").

Accordingly,

       **IT IS HEREBY ORDERED** that:

(1) Defendant's Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART**.

(2) Defendant's Motion for Summary Judgment is **GRANTED**.

(3) Plaintiff's Motion for Summary Judgment is **DENIED**.

DATED this 15th day of July, 2014.

*/s/ Barbara J. Rothstein*

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE